Good morning, Judge Beha, Judge Callahan, Judge Kirsten. Good morning. My name is Bill Ingaldson. I represent defendants and appellants. Do you have to speak up, sir? I'm sorry, yes. Move the microphone up a little bit and project. One of my fallacies I've been told many times. My name is Bill Ingaldson. I represent defendants and appellants. Ingaldson Fitzgerald. And I'd like to start off by saying there is a fundamental fact here that both parties are in agreement of, and that is that ALPS agreed to provide a defense to Ingaldson, Moss, and Fitzgerald, and I'll just say IMF because it's shorter, agreed to provide our firm with a defense subject to the provisions and restrictions of Alaska's CHI statute, AS-2196-100. That agreement was confirmed in writing by retained counsel that he was being retained as CHI counsel, and there's no dispute about that. ALPS agrees with that. There was a meeting of the minds that the attorney would be provided pursuant to the CHI statute. Now, since that time, the issue of preemptions come up that I'm going to discuss, but at the time, it's quite obvious neither side thought that the issue of conflict counsel was preempted because they didn't raise it in the original briefing, although ALPS did raise preemption as to its insurance policy as to the application at CHI counsel. No one thought it was preempted. ALPS didn't provide an attorney subject to certain conditions, CHI counsel with exceptions. They agreed to provide CHI counsel. There was a meeting of the minds. So how do we get to where we are now? Because ALPS is saying, well, wait a minute, AS-2196-100 was changed. It was modified by preemption, and I respectfully suggest that reflects a fundamental misunderstanding and misapplication of preemption. Well, one of the things, all right, you can't, I don't think that you can probably credibly dispute the fact that ALPS has always said they were reserving their rights and they were reserving their rights to seek reimbursement. I agree. And the theories have changed. But they've never said, oh, we're not going to seek reimbursement if it ends up that we're entitled to. So there's a couple of areas that I want to go through with you. You argue that ALPS waived its right to seek reimbursement because ALPS agreed to defend Engelson in accordance with Alaska law, which law prevented such reimbursement. But that law no longer is valid, as our court deemed it preempted. So how are you not essentially arguing that ALPS waived preemption, which is something that we held in Olympic pipeline, cannot be waived? Because ALPS is not waiving preemption. And to the extent that I said that or we said in our brief that that was inartfully said, because what they did do is they waived the right to seek reimbursement. They didn't waive preemption. They waived the right to seek reimbursement, not allowed under Alaska law. And let me tell you that reserving the right to seek reimbursement in Alaska law, even under AS-2196-100, is allowed. All ALPS had to do is deny some of its claims. And if it denies claims, then under Alaska law it can seek reimbursement of funds it paid for denied claims. It never did that. It defended all the claims under reservation. And the Alaska Supreme Court has ruled that in that situation they can't seek reimbursement. And so here they're not. But that's really important because that's what I want to get to and I'm getting to. Why are we talking Alaska Supreme Court when it's preempted? Well, I'm just saying that the provisions of AS-2196-100, it's not. The Alaska law is preempted, but their agreement is not. And this is important to understand. Under Montana law, preemption Olympic pipeline held displaces state law. It doesn't change it. It doesn't modify the language. It displaces it. It does not apply. And as this Court said in footnote 2 of its decision, the ‑‑ Why does Montana law even apply in this case where both parties agreed to be bound by Alaska law? So this is all like a moving target here. Well, it's not really. Let me explain why. It's like everyone, you know, it's a moving target. They've always said they're not going to ‑‑ they're going to seek reimbursement. But for a very different reason. Can we back up for one second on that point? Because I agree with Judge Callahan. As I read the record, ALPS has consistently said they're going to reserve their rights and try to ‑‑ at least try to seek reimbursement for sure. But my understanding is that their position was really based upon the unpublished Union America decision. In the district court, they're making a very different argument, that under Alaska law they were going to be able to ‑‑ That's exactly right. Their position was under Alaska law they could get reimbursement. And that's why I mention it. And that's black letter. That's not ‑‑ that is ‑‑ They can't. That's decided now. And that's the only reason I mention that decision. But the reason you look to Montana law is Montana law governs this, the regulation of risk retention, of ALPS, because they're a risk retention group that's chartered in Montana. So you look at Montana law. My point with that is Montana law, and I want to make two points here. The first is Montana law does not prohibit waiving the right to get reimbursement. It's not prohibited under Montana law. In fact, in Montana law, if you don't do a reservation of rights letter, you waive it, as an example. If you don't, the second part of Montana law is tell the person, tell the insured that you intend to seek, to enforce that, to seek reimbursement. They did that. They did part of that at least, right? They did part. Not the second part. And I will get to that. The reservation of rights letter reserved. And your argument, I think, is they didn't do the second step. Right. And I'll explain that in just a moment. Okay. But to answer Judge Callahan's question, in this case, they agreed to provide us, and Montana law, to back up a little bit, analyzed this whole conflict counsel under a contract theory. And they said, look, if you offer to provide conflict counsel under certain restrictions, and the insured accepts it, that forms a contract to which the parties are bound. And in this case, they offered to provide our firm with a defense pursuant to the provisions of AS-2196-100. Now, whether that was written in a statute or whether they just wrote out those separately, it has the same effect. And so they're not waiving preemption. What they're waiving is the right to contest the applicability of that statute to what they contractually agreed to provide us. And let's talk about Olympic Pipe, for example, because this court in Olympic Pipe also pointed out that the problem with that is that if they're the city, they said it was a private proprietor, if, for example, it was a private landowner that said, in addition to these federal requirements, I want you to do additional inspections. And Olympic Pipe said, you could do that. That's not waiving preemption. That's not trying to insert yourself into the field of regulating pipelines. But they said, no, the city of Seattle was trying to regulate pipelines. If the state of Alaska here had said to ALPS, look, if you want to do business in our state, you have to comply with our CHI statute. That would not be enforceable. And even if ALPS agreed to do that, they couldn't waive that. That would not be enforceable because the state's trying to regulate ALPS. We're not trying to regulate ALPS. Our firm's not trying to regulate ALPS. ALPS made this offer. And so ‑‑ I have another question, since your time is limited, that I need to have answered. You argue that ALPS cannot recover for work performed on covered claims such as negligence. But a panel of this court already determined that all of Engelson's claims were not covered by its policy with ALPS. And that's ALPS 1, I guess. Why does the law of the case not bar you from relitigating whether certain claims are covered? Well, I would respectfully suggest that that was a comment by this court in dicta that is not accurate. But you're aware that well‑reasoned dicta in the Ninth Circuit is a rule of precedent. I agree with that. But this is, with respect, is not well‑reasoned for this reason. Judge Gleeson never made that finding. And this court simply said the district court found none of the claims were covered. And that's not true. As we point out here, the district court found the remaining claims were not covered. Because what happened in the underlying case is that the bankruptcy trustee won on certain claims, won ‑‑ got summary judgment on certain claims, which was upheld by the district court. And then the bankruptcy trustee dismissed the other claims. So there was not a finding on the other claims. And on appeal, the only issues were the claims that ‑‑ the claims of fraudulent conveyance that were ruled against our firm. And that was the only thing that Judge Gleeson said were there's no coverage for. And so ‑‑ and the reason I was significant underneath below is because below at that issue was whether or not they had an obligation to pay the indemnity. This is a case that our firm, you know, I mean, the sad part about this entire case is it's a $75,000 case that we present, the one and only case in 25 years to our insurance carrier. They defend us. We end up paying over $100,000 in indemnity and now over $200,000 in defense fees. And there's something that just is wrong about that. Can I ask a question? I think you have a little time left. Under Montana law, would ALPS have had to provide counsel for you? No. Under Montana law, yes. Let me just say this. Under Montana law, they have the right to ‑‑ if they don't, they have the same consequences as here. But under Montana law, they get to control the defense. They provide the attorney. They control the defense. And they can then file a DEC action. But they have to do two things. So there, they provide the defense, but they have to do two things. They have to do a reservation, which they did in this case. And I would suggest under REBI, which is the only case that directly addressed this, under the REBI decision, they also have to tell ‑‑ there are two prongs that are said. They have to tell the insurer that they intend to enforce that right, to seek reimbursement. And that's really important because that seems to be getting blurred. There's this Aspen Way case that I believe is a district court case that did not deal with that second prong. It wasn't that issue in that case that's cited. And there's the Union National case. It's a Sixth Circuit case that didn't deal with that issue. But REBI made it very clear that there are two prongs. And in REBI, they specifically said in the decision that travelers in that case, in addition to doing a reservation, also notified REBI of its intention to seek recoupment. And interestingly, under Montana law, if the insurer objects to that, then they can't get reimbursement. Then they run the risk of either not providing a defense and getting exposed to indemnity they might not other have, but the insurer can object to that defense. And in this case, it's undisputed that once, which is even kind of vague, that the first time that ALF said, well, yeah, threaten to actually try and recoup, we immediately, our attorney, immediately objected to that. And so that's not in dispute in this case. Is there any portion of the correspondence authored by the insurer, by ALPS, that you can specifically point to which says, as a matter of contract, we are contracting only on Alaska law and are not contracting on LRA and Montana law? No, there isn't. And I'll say the reason for that is that no one at the time thought the LRA preempted Alaska law. So there would be no reason for ALPS to do that. But what they did clearly do and what our attorney clearly confirmed is that they were providing a defense pursuant to the provisions of Alaska's CHI Council. And again, the CHI Council doesn't change, as they're arguing now. It goes away. But that doesn't prevent them from contractually agreeing to provide us. They're not prevented from contractually agreeing to those conditions. They can propose other conditions that they would be bound to. The last thing I want to say, if I want to make one last point, and that is just the issue of damages that I don't want to spend a lot of time on in Estoppo, but both of those issues are tribal issues that we had not gotten a chance to try. And so to just agree to these especially, I think it's particularly outrageous that they can get attorney's fees after they're fired. When you come back, I'd like to hear your best argument about prejudice, why the district court was wrong on the prejudice ruling. Thank you. All right. And I'll make sure there's enough time to hear that argument. Thank you. Go ahead. Good morning. Good morning. May it please the Court, Your Honors. Counsel. I'm having a hard time hearing you. Sorry. This courtroom, we've been telling this to everyone for this every day, so. Thank you. Go right in there. Is that better now? Kind of. A little. We'll see. Your Honors, Jeremy Fitzpatrick on behalf of ALPS. May it please the Court and Counsel. I want to reorder my argument just a little bit to start with the questions that you were asking so I can hopefully get to the things that are important to you and your consideration. The first one relates to the question regarding the law of the case. This court in ALPS 1, I think as you referred to it perhaps, Your Honor, in its holding in the case found that there were no claims covered by the policy in the underlying case. And Counsel notes that he thinks that was a misstatement of what Judge Gleeson intended. That's not what Judge Gleeson thinks. Counsel, what difference does it make? They're uncovered claims. They were defended. Now we're here about fees. So can you help me? I actually agree with Mr. Engelson's assessment of that history, but I don't think it matters too much, does it? They're uncovered claims. That's what we're here on, whether that's a subset or not. I think it only matters to the extent that they argue, Your Honor, that for some reason you should remand the matter back to the district court specifically to evaluate whether the defense fees were incurred for covered or uncovered claims. I believe that's an argument they make. And because there are no uncovered claims, that would be not a reason to send the matter back. All right. What's your next point? My next point, Your Honor, is that it relates to Montana law, and I think those were questions that you had. Would you have had to provide counsel for them under Montana law? Would we have been required to provide independent counsel? Is that your question? Right. It's a different setup, isn't it? I don't want to give you the wrong answer, Your Honor, and it wasn't joined directly in the district court below. Counsel, I sort of think it is. It does seem to me, to the extent we can turn back the hands of time, this seems to have been absolutely clear to me that nobody was talking about preemption in this case, and that was not the reason ELPS was taking its position that it was going to or had the right to seek reimbursement. You were making a very different argument under Alaska law, right? You're citing a case that's unpublished, and it doesn't even cite CHI. It was really a completely different universe, and I'm not casting aspersions. It's just that I'm trying to figure out, because there's a prejudice issue here that I take very seriously, and I'm trying to turn back the hands of time. Your position was entirely different, wasn't it? Well, I'll resound off of what you mentioned, Judge Callahan, about moving the ball or the ball moving around. ELPS's position has been entirely consistent throughout this matter. Only to the extent that you've taken the position that you're entitled to seek reimbursement. That's correct. But not why, not the reason why. So I'm not kiting the ball here. I want to give you a chance to respond. I'm trying to put myself back in the shoes of this firm as of the time this was all taking off, and there was a reservation of rights letter, no question. It didn't say why. It just said it was going to be your client was reserving its rights. And at that point, under Alaska law, that was black letter wrong. The Alaska Supreme Court has affirmed that now. So I'm really struggling with whether the firm was in a position to really assess its risks. I mean, I can imagine a lawyer saying, well, take your best shot at that argument under Alaska law. And here we are. So, yes, I agree with you that your client was consistent, but for really different reasons. What do I do with that? Well, Your Honor, I think what the record reflects is the reservation of rights letter offered to provide a defense to IMF subject to the policy and any applicable law without making a specific reference to what law applied. Alaska law, then and now, under preemption, was that the CHI statute does not allow for the prevention of risk retention groups to be allowed to be reimbursed for fees. That was the law. When you say that, I'm with Judge Callahan. When you say Alaska law under preemption, that means we're not under Alaska law. Alaska law is preempted. Well, Your Honor. It does sound like lawyers speak to me to talk about. I guess I kind of want to interject when you're answering this because I think we're all talking about this. Both ALPS and Engelson agreed that ALPS would provide a defense in accordance with Alaska law. Because at the time ALPS accepted Engelson's tender, Alaska law prohibited reimbursement for non-covered litigation expenses. Why isn't ALPS a stop from seeking reimbursement now? I mean, that's kind of what — That's it. That's the question. Because ALPS didn't take an inconsistent position, Your Honor. The position ALPS took in the reservation letter, and it's undisputed and they don't disagree with it, is that ALPS had a right to reimbursement for any fees that were not covered in the underlying matter. But, counsel, here's the part. You're not going to come back to the podium, so I want you to have a chance to respond. Sure. What Mr. Engelson has said consistently, and I think the record backs him up, the reservation of rights letter quotes pretty much from the CHI statute, from Alaska's CHI statute. And the conduct, of course, estoppel can be an assertion or conduct, and the conduct of your client seems to be entirely consistent with Alaska law applying. So that's why I'm really struggling with the estoppel question. Well, there's two issues, Your Honor, and I appreciate your raising them. And the first one goes to this issue, and they've raised it, that the Risk Retention Act displaces law completely and there is no application of Alaska law. That is not what the statute says. 3902A1 says that state regulations or rules are preempted to the extent. Right. And so that makes your argument harder because then your insured is left guessing at the outset, where is the insurance company going to assert this right and where it's not going to assert this right? How would they have known? Well, I think they knew, Your Honor, because they accepted the defense subject to a reservation of rights that said ALPS had the right to seek reimbursement of fees. They knew precisely. Right. And the argument you all were making was one that was a nonstarter in Alaska. Well, the position that ALPS asserted was correct under the law then and now. ALPS. No, it's not. The Alaska Supreme Court has said you were wrong on Alaska law. What you're saying is it's the same argument you're making in this brief, Alaska law as conformed by Federal law, which means it's preempted. It means Section D of the statute is preempted, Your Honor, and Alaska law as preempted and conformed to the Risk Retention Act requires that risk retention groups be allowed to receive reimbursement for uncovered claims. That is the law of Alaska. So is your argument, whether we accept it or not, is you're saying for purposes of equitable estoppel, the legal landscape has changed, namely Alaska law was deemed preempted after ALPS agreed to defend Engelson under Alaska law. Is that your legal position? Well, the position is that Alaska law then also was that reimbursement was allowed because that's what Federal law required. The decision obviously came from this court. But you didn't argue it as a preemption type of thing at that point. So your legal basis for seeking reimbursement has changed. You know, before ALPS's argument turned on its interpretation of Alaska law, now it turns on the fact that Alaska law is preempted. Am I correct? I agree with you that it's supported by the record that the preemption issue came into play during this litigation. I agree with you, Your Honor. It came into play when Judge Gleeson asked you to brief it, right? That's correct. For the most part, Your Honor, yes. The earlier reference was you're responding to their summary judgment motion where you said, no, we don't have to submit our filings to the Alaska Division of Insurance. Correct. I think I agree with you, Your Honor, the central issue with regard to preemption did come at Judge Gleeson's invitation. And I'm not trying to – I've made this clear, but I want to give you a chance to respond. My read of the record is that that was a surprise to everybody. Is that fair? I think it was a – the legal reason for reimbursement being allowed, it was a different way to look at the same question that had already been – it wasn't a surprise to ALPS that they had a right to reimbursement. It wasn't a surprise to IMF that there was a right to reimbursement because ALPS had consistently asserted that right. For a completely different reason. But ALPS is operating in many different states, and had it taken the position that Montana law controls because of this preemption statute anywhere else, this must come up – I would think this would have come up with a risk retention group operating in many states in many other pieces of litigation. Is that wrong? I'm not familiar with the answer to that question. Well, you're both taking an all-or-nothing stance, which is we're going to decide it all-or-nothing. If equitable estoppel applies, you lose. If it doesn't, they lose. And did – I'm just curious because it's not going to affect how we decide the case because we have to call the legal ball. Did you participate in our mediation program at all? No, Your Honor, we did not. Do you know about our mediation program? Yes, Your Honor. I don't think this case was referred to mediation as my memory of it. Usually they initially, in several cases, if they're counseled, they initially contact people before the briefing. My memory, and I may be incorrect, I don't believe that a recommendation was made for mediation. And we didn't participate in it, Your Honors. And you don't need to wait for a recommendation from our court, FYI. Thank you, Your Honor. We do have a mediation service that's available, and it's excellent. Your Honors, and sort of reordering my argument to respond to your questions, I think the main issue, Your Honor, here is that the district court made findings that Alps did not waive and should not be found to have estopped its rights to a certain reimbursement in this matter. She made specific findings regarding that, Your Honors, and the district court was correct in making those findings. Excuse me. And I would specifically, when you look at the record here, the argument, I do want to address this, the argument they make, the real argument that they've made for estoppel or waiver is this contract argument. They say that Alps agreed to provide them a defense subject to certain terms. You have a question, Your Honor. May I ask you this, Mr. Fitzgerald? Was there any evidence below that there was a tribal issue of fact that Engelson would have changed its position had you put the LRRA preemption argument into your reservation? No. And I think that's an important question, Your Honor, because their affidavits are important in that sense. They're very specific about what they say. They say in their affidavits that we understood the defense was being provided by the Chai statute. They do not say, and they could have said, we understood that reimbursement was not going to be pursued in this case, and they don't go that far. They don't make that statement. There's some indication, maybe it's argument without any evidence, which is something which sometimes we get in this court, but there is some argument that had they known that you were seeking reimbursement, they wouldn't have pursued an all-or-nothing situation with Barstow and would have settled for $40,000 instead of incurring $200,000 in reimbursement. And I agree with you, Your Honor. That is not, I know exactly the portion of the brief you're referring to, and it is not, there is no record citation that follows that sentence. And there is, as I've just pointed to, there is no evidence that supports it. And I think that goes. It's sort of hindsight now. Well, it's, and that goes, there's this argument of a stop. The argument is it's not supported in the record that ALPS asserted, and it unquestionably did, that there was a right to reimbursement, that we believe there was not a right. Now they want to argue that ALPS should be stopped from advocating its consistent position, despite the fact they apparently. It's just not a consistent position. I just can't, that's very distracting to me, when you continue to insist your position was consistent. Thank you, Your Honor. And I'll simply phrase it then in this way, that they are arguing that ALPS should not be allowed to be reimbursed for defense costs in a matter in which ALPS, in the Reservation of Rights letter unquestionably indicated that they were providing defense subject to the right to be reimbursed for uncovered claims. They apparently, Your Honor, are indicating that they had a different view about that. They certainly don't say that they told ALPS about that view, and they did not. So they want to argue that ALPS should be stopped from asserting its position regarding reimbursement, which I would say is consistent, Your Honor. I don't know how else to say it. I apologize. When they apparently had a different view and didn't express that view. And I think that goes to some of the disingenuousness of the argument being I don't think we ever got to Montana law. I did want to answer. I have limited time, Your Honor, that question. I simply think they're misreading Rebe and Montana law. I don't read that case the same way that they do. There is a two-part test in Rebe. It's that the insurer must timely and explicitly reserve the right to recoup costs, and it must provide specific and adequate notice of the possibility, and that is the word used by the Rebe court, the possibility of reimbursement. And ALPS met that test here. The Rebe court, there was, as he noted, travelers kind of made an odd way of performing the reservation in that case. They sent two letters, but the court didn't say two letters were necessary. It said there was a two-part test. ALPS met that two-part test. So to the extent that Montana law applies, ALPS should prevail. Counsel, is it your position that you met the two-part test in the initial reservation of rights letter? Yes, it is, Your Honor. I don't think there's – I think that's – yes, we did. Thank you. Your Honor, there was an issue raised in the briefing, and I have limited time, but it was with regard to the trier fact, and it should be sent down to the trier fact. I just want to make it clear, Judge Gleeson is the trier fact in this matter. There was no jury trial requested by either side. So to send this matter back to Judge Gleeson is to send it back to the district court for the same findings on the same evidence on the same issues that she's already correctly decided on, and there's a futility about doing that. On the Rule 26A1 disclosure issue, Your Honor, which we haven't discussed a ton, the rule of the circuit is that there must be bad faith or willfulness. None of the cases they cite you to ever excludes evidence without those elements, and you should not hear – see, I'm out of time, Your Honor. Thank you for your argument. All right, you have a minute and 45 seconds. I'll try to make this quick. I want to talk, of course, Judge Christian asked me to talk about prejudice. Before I do that, in 10 seconds, I just want to reemphasize in Rebe that if the answer is just including in the reservation of rights letter meets both prongs, then there would be no need for two prongs because every reservation of rights letter would satisfy that, including the one in travelers. So that would mean that they're just being redundant by requiring two, and I don't think that's what the Montana Supreme Court was saying. I think the reason is you have to tell – Judge Christian's question is more important. As to prejudice, first of all, and in nine seconds, I want to say that I don't want to miss or to have this Court overlook the contract argument that we have because they do, under Montana law, have the ability to contractually agree to the terms of their defense, and that's what they did do. Equitable estoppels separately and in terms of prejudice I think is clear, and what's important here is that Judge Gleeson made that finding, but they never filed a summary judgment motion. We never had the opportunity to develop facts on that, and in fact, once they first made this in the supplemental briefing, raised this argument, way back at the beginning of the case about conforming or changing the language, then we asked to open up discovery on that. We didn't beforehand, and Judge Gleeson said it was moot, and that was like a month after, I mean, while this case was still pending. So in terms of the prejudice we suffered, we can get up and say, and you all would say, well, that's a self-serving statement because I'm going to say we would have done something different. So what do you look at? You look at the actual facts, and what happened in this case? In this case, when we found out we'd lost the issue on coverage, we got rid of the attorney, the retained attorney, and represented ourselves, and we negotiated a settlement. We negotiated a settlement because we looked at, obviously, the costs that would occur to appeal this, and frankly my partner was not very happy about that because he felt very strong about this whole issue of fraudulent conveyance under the case law, but looking at the cost to defend that and take that up versus settling the case, we made that business decision. And any reasonable person, any reasonable person except perhaps an insurer for different reasons, no reasonable person would spend $200,000 defending a case that can settle for $30,000. No one would do that, I would suggest. But an insurance company might because they're looking at other cases. They're looking at deterring other claims. They have lots of reasons why they might want to get a decision, and I do insurance defense work, and I have clients that will do that, and they will spend a lot more money than the case is worth because it might prevent 20 other cases from being filed. We don't have that same interest, so the prejudice is very obvious here. All right, you're over time, and you've answered the question. Thank you both for your argument in this matter. This will stand submitted. The court will be in recess until 9.45 when we'll reconstitute the panel. All rise. The court stands in recess.
judges: Callahan, Bea, Christen